STATE EX REL. KOSTAS *v.* JOHNSON, JUDGE.

[No. 28,249.   Filed November 18, 1946.]

Charles W. Appleman, Louis B. Ewbank and Richard L. Ewbank, all of Indianapolis, for relator.

Herman W. Kothe and Grier M. Shotwell, both of Indianapolis, for respondent.

YOUNG, J.—On and prior to May 31, 1946, there was pending in Room 3 of the Superior Court of Marion County, Indiana, an action wherein relator was plaintiff. A partnership between plaintiff and defendants was alleged and the plaintiff sought an accounting and a receiver for the partner-

ship property. The case was tried without a jury and the evidence was concluded on May 31, 1946, and taken under advisement. We know judicially that the May term of the Superior Court of Marion County ended on June 1, and that the June term of said court ended on June 29, and said court was in vacation from said date until September 3, 1946. It does not appear that during the vacation of said court any special, adjourned or continued term of said court had been provided, in the absence of which the court and the judge were without power to determine the issue held under advisement. *Glaser* v. *State* (1932), 204 Ind. 59, 183 N. E. 33, 35; *State* v. *Hindman* (1902), 159 Ind. 586, 589, 590, 65 N. E. 911; *State* v. *Bridges* (1946), 116 Ind. App. 483, 64 N. E. (2d) 411, 414; *Isaacs, Trustee* v. *Fletcher American Nat. Bank* (1934), 98 Ind. App. 111, 120, 185 N. E. 154, 157.

It appears from respondent's verified answer, without contradiction in relator's reply, that during the 24 judicial days intervening between May 31, and June 29, date of adjournment for summer vacation, the docket of said court was conjested with other matters of equal importance and right to priority, and that during said period of time rulings on pleadings in 56 cases were made and entered, six cases were tried and taken under advisement, support hearings and hearings upon other domestic matters, not including divorces, were heard in 109 cases, and 154 cases were tried and disposed of, making a total of 324 cases in which the court acted during the period between May 31, and June 29, 1946.

The court had not decided relator's case when the June term ended and summer vacation intervened. During vacation the judge of said court did not file his

determination of said case in writing with the papers in the case, and on August 30, 1946, because of respondent's failure to decide said case within 90 days after taking same under advisement, relator filed in the office of the clerk of said court his application that the submission of said cause be withdrawn from the judge who tried the same, and that the judge be disqualified to hear or determine same, and that a special judge be appointed to take jurisdiction thereof. A copy of said application to terminate the jurisdiction of the judge who heard the evidence in said cause was left with the wife of said judge at their home and there is no claim that his attention was not called to same promptly.

Notwithstanding the filing of said application, respondent continued jurisdiction over said cause and announced that he would decide and determine same.

Relator thereupon presented to, and later filed in, this court his petition for a writ prohibiting respondent from proceeding further in said matter. A temporary writ was not issued, but respondent was ordered to file answer and briefs, which has been done.

The statute, upon which relator relies, reads as follows:

"Upon trials of questions of fact by the court, it shall not be necessary for the court to state its finding, except generally for the plaintiff or defendant, unless one of the parties requests it, with a view of excepting to the decision of the court upon the questions of law involved in the trial; in which case, the court shall first state the facts in writing, and then the conclusions of law upon them, and judgment shall be entered accordingly. And whenever any issue of law or fact is submitted to the court for trial, and the judge shall take the same under advisement, the judge shall not, except in case of severe illness of himself or family, hold the same under advisement for more than sixty (60) days;

and, if the court wherein said issues arose be not then in session, he shall file his determination therein, in writing, with the papers in the case: Provided, That if the judge shall fail to determine any issue of law or fact which has been taken under advisement within ninety (90) days after having taken the same under advisement, upon written application of any of the parties to the action, or their attorneys of record, duly filed in the office of the clerk of said court and called to the attention of said judge before the announcement of the decision of the issue in question, the submission of said issue shall thereupon be withdrawn and the judge before whom said cause is pending shall be disqualified to hear or determine any of the issues in said cause, and a special judge shall be appointed to take jurisdiction thereof under the same rules and regulations prescribed by law in cases where the judge is disqualified for hearing a given cause." (§ 2-2102, Burns' 1946 Replacement.)

It is contended by relator that by virtue of this statute respondent has been without jurisdiction in the case referred to since August 30, 1946, and should be prohibited from proceeding further therein.

It is contended by respondent, among other things, that the statute is unconstitutional and void as a legislative interference with judicial functions insofar as it attempts to fix the time within which a court shall rule upon an issue submitted to it. This statute has been before this court and the Appellate Court in its different stages a number of times, but its constitutionality has never been presented or passed on, although in one case this court took occasion to express doubt concerning the constitutional validity of the proviso depriving the court of further jurisdiction of any issue taken and held under advisement for 90 days or more. *State ex rel. Harlan* v. *Municipal Court* (1942), 221 Ind. 12, 14, 46 N. E. (2d) 198.

It is also of interest and significant, we think, to note that never in the several cases involving this statute which have been before this court and the Appellate Court has the statute been given literal effect. In *Jones* v. *Swift, Exr.* (1883), 94 Ind. 516, and in *Smith* v. *Uhler* (1884), 99 Ind. 140, 142, the language forbidding the court to hold any issue under advisement for more than 60 days was held to be directory only and judgments rendered after the prescribed period were held to be valid. In *State* v. *Wirt* (1931), 203 Ind. 121, 130, 132, 177 N. E. 441, an application to withdraw submission was made, but the proviso clause was held to create only a procedural privilege which could be, and was held to have been, waived in that case. In *State ex rel. Harlan* v. *Municipal Court, supra,* it was held that after a judge had heard the evidence in a case, and later held a motion for a new trial under advisement for more than 90 days, he was still entitled and required to rule upon the motion for a new trial upon the ground that the proviso in the statute, insofar as it would require appointment of a special judge to pass upon a motion for a new trial was superseded by Rule 1-9 of this court requiring that motions for a new trial shall be ruled on by the judge who had heard the evidence.

The constitutionality of those portions of the statute which require the judge to act within a named period of time is now before us and decision involves the application of old and well established principles. The separation and independence of the executive, legislative and judicial branches of government are fundamental in the scheme of government which has uniformly prevailed in this country. Provision therefor is found in the Federal Constitution and in the constitutions of substantially all of the states.

Section 1 of Art. 3 of the Constitution of Indiana reads as follows:

"The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial; and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

Of this section of the Constitution, Judge Elliott said in *State, ex rel. Hovey* v. *Noble* (1889), 118 Ind. 350, at p. 354, 21 N. E. 244:

". . . There is more than a mere theoretical separation, or else words are powerless and constitutions mere empty fulminations. The provisions of the Constitution we have quoted, taken in connection with those which prescribe, define and limit the powers of the other departments of government, remove all doubt and make it incontrovertibly plain that the courts possess the entire body of the intrinsic judicial power of the State, and that the other departments are prohibited from assuming to exercise any part of that judicial power."

Section 1 of Art. 7 says that, "The judicial power of the State shall be vested in a Supreme Court, in Circuit Courts and such other courts as the General Assembly may establish."

Of this section, Judge Elliott said, in *State, ex rel. Hovey v. Noble, supra,* at p. 352:

". . . The effect of this provision is to vest in the courts the whole element of sovereignty known as the judicial, established by the Constitution and the laws enacted under it, except in a few instances where powers of a judicial nature are expressly and specifically lodged elsewhere . . ."

In the same case, at p. 355, the following words from an Illinois case are quoted with approval:

" 'If there is any one proposition immutably established, I had supposed it to be, that the judiciary department is absolutely independent of the other departments of the government.' "

In *Board* v. *Albright* (1907), 168 Ind. 564, 578, 81 N. E. 578, the following language is quoted from *Board, etc.* v. *Stout* (1893), 136 Ind. 53, 35 N. E. 683:

"Courts are an integral part of the government, and entirely independent; deriving their powers directly from the Constitution, in so far as such powers are not inherent in the very nature of the judiciary. A court of general jurisdiction, whether named in the Constitution or established in pursuance of the provisions of the Constitution, cannot be directed, controlled, or impeded in its functions by any of the other departments of the government. The security of human rights and safety of free institutions require the absolute integrity and freedom of action of courts."

By these provisions in the Constitution the three departments of government are made equal, coordinate, and independent, *Lafayette M. & B. R. Co.* v. *Geiger* (1870), 34 Ind. 185, and no department of the state government can be controlled or embarrassed by another department of the government, unless the Constitution so ordains. *State* v. *Shumaker* (1928), 200 Ind. 716, 721, 164 N. E. 408. Any act by which the legislature attempts to hamper judicial functions or interfere with the discharge of judicial duties is unconstitutional and void. 16 C. J. S. 298; 11 Am. Jur. p. 908.

The principles above enunciated have been applied to statutes undertaking to fix the time within which

courts shall act in certain cases or matters. Rottschaefer on Constitutional Law, p. 53. *Atchison T. & S. F. R. Co.* v. *Long* (1926), 122 Okla. 86, 88, 251 P. 486; *Schario* v. *State* (1922), 105 Ohio St. 535, 138 N. E. 63, 64; *Riglander* v. *Star Co.* (1904), 90 N. Y. Supp. 774, 775, Affirmed, 181 N. Y. 531, 73 N. E. 1131.

In each of the cases just cited, legislation attempting to require judicial action within periods named was held unconstitutional and void as legislative interference with judicial functions.

In *Riglander* v. *Star Co., supra,* the following language was used:

> "One of the powers which has always been recognized as inherent in courts, which are protected in their existence, their powers, and jurisdiction by constitutional provisions, has been the right to control its order of business, and to so conduct the same that the rights of all suitors before them may be safeguarded. This power has been recognized as judicial in its nature, and as being a necessary appendage to a court organized to enforce rights and redress wrongs."

In the same case the court said that in considering the order of disposition of cases courts exercise judicial discretion with which the legislature may not interfere.

In *Schario* v. *State, supra,* the court used the following language:

> "We hold, therefore, that a provision of law mandatory in its terms, intention, and character, requiring the court in the exercise of a jurisdiction duly conferred upon it to hear or determine a cause. within 30 days from the time within which it is filed in court, or submitted to the court, is an unreasonable and unconstitutional invasion of judicial power, and therefore void."

Rottschaefer on Constitutional Law, says at p. 53:

"The principal of separation of powers prohibits the legislature not only from exercising judicial functions but also from unduly burdening or interfering with the judicial department in its exercise thereof. . . . Statutes unduly restricting the court's discretion in controlling the conduct of its business, as by requiring certain cases to be tried within 10 days after filing the answer therein, or by limiting the time within which appeals must be heard and determined, have been held invalid on this basis."

This court has also given expression to the same idea. In 1917, the legislature passed an act concerning civil procedure and undertook to prescribe rules to bind courts in the performance of their duties. The act was promptly held unconstitutional. *Solimeto* v. *State* (1919), 188 Ind. 170, 172, 122 N. E. 578; *Gray* v. *McLaughlin* (1921), 191 Ind. 190, 193, 131 N. E. 518; *Roberts* v. *Donahoe* (1921), 191 Ind. 98, 104, 131 N. E. 33. In *Solimeto* v. *State, supra,* Judge Townsend said:

"The court has power to make its own rules as to briefs, *and as to the conduct of business before the court.* It is not a legislative function to make rules for the court, or to say what the court shall consider a sufficient brief. *This court will have to be the judge of how it can best expedite business,* . . ." (Our italics.)

The same language was repeated in *Gray* v. *McLaughlin, supra.* Likewise, it may be said in the case before us, that the court and not the legislature must be the judge of the order in which it will dispose of cases and what period of time proper disposition shall require. There may be, and probably are, abuses and unjustified delays by courts in the disposition of cases, but the remedy is with the judicial branch of the gov-.

ernment, not the legislative, or perhaps at the polls when a delinquent judge comes up for reelection.

The application of the foregoing rules and principles to the case before us is so obvious as hardly to require elucidation. Here we have a case where the evidence was heard by a regular judge of the Superior Court of Marion County and taken under advisement. Its disposition, and determination of the time of disposition, would be judicial acts, and the statute under consideration undertook to authorize interference with these judicial functions. With the number of cases which the record shows required the court's attention, it is clear that if business was to be expedited the court must have full control of the time and order and manner of disposition. To permit one of the parties in one of very many pending cases to require disposition of his case in advance of all the others would clearly be such interference with the management of the business of the court as would constitute interference with judicial functions.

We conclude, therefore, that the statute involved constitutes legislative interference with the judiciary and to the extent that it requires action by courts within specified times and deprives the courts of jurisdiction for failure to act within such time, is unconstitutional and void. Having so decided, it is unnecessary to consider other points presented by the respondent.

The relator in arguing the constitutionality of the statute, urges that the Superior Court of Marion County is a statutory court created by the legislature and therefore subject to regulation by its creator. It is true that the Superior Court of Marion County is a statutory court but that does not mean that it acquires its judicial power from the legislature. The legislature, under the Constitution, may create other

courts than those named in the Constitution. But the Constitution alone bestows judicial power and all judicial power comes from the Constitution and is vested by it in courts and judges who can no more be interfered with by the legislature than a court or a judge created by the Constitution itself. *State ex rel. Youngblood* v. *Warrick Circuit Court, supra; Board, etc.* v. *Albright, supra; Board* v. *Stout, supra; State, ex rel* v. *Noble, supra.*

Relator leans heavily upon *Burton* v. *McGregor* (1853), 4 Ind. 550, which involved the statute requiring a justice of the peace to enter certain judgments immediately and others within four days after trial. It is true that this case holds that the failure of the justice to enter judgment within the specified period terminated his authority over the case. But the constitutionality of the statute was not presented, and therefore not decided, and we have found no other case to the same effect. On the contrary, *State, ex rel. Cory* v. *Brewer* (1878), 64 Ind. 131, and *Martin* v. *Pifer* (1884), 96 Ind. 245, fail to follow it. The court attempts to distinguish these cases from *Burton* v. *McGregor, supra,* but the effect of these cases is seriously to weaken the force of *Burton* v. *McGregor, supra.* We do not think that *Burton* v. *McGregor* can properly be considered authority for sustaining the validity of the statute before us, and to the extent that it may be so considered, we decline to follow it.

Believing as we do that the portions of the statute upon which relator relies are unconstitutional, we find that respondent was not shorn of his jurisdiction in this case and that relator therefore is not entitled to the writ of prohibition prayed for.

Writ denied.

NOTE.—Reported in 69 N. E. (2d) 592.